IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | |
|---|---|
| **HECTOR MIGUEL AGUILAR ROSADO,** §<br>　　Petitioner, §<br>§<br>v. §<br>§<br>§<br>**MARY DE ANDA YBARRA,** *in her official capacity as Field Office Director of El Paso Field Office of U.S. Immigration & Customs Enforcement, et al.*, §<br>　　Respondents. § | EP-25-CV-00652-DB |

## MEMORANDUM OPINION AND ORDER

On this day, the Court considered Petitioner Hector Miguel Aguilar Rosado's ("Petitioner") "Petition for Writ of Habeas Corpus and Complaint for Declaratory and Injunctive Relief" ("Petition"), filed on December 11, 2025, ECF No.[1] 1. After due consideration, this Court asserts its jurisdiction over Petitioner's claims and hereby orders Respondents to immediately release Petitioner from custody, or to immediately allow Petitioner to post bond in the amount of $2,500 and release him under the terms of the Immigration Judge's order dated August 28, 2025. *See* ECF No. 1–5. For the following reasons, the Petition is granted in part.

## BACKGROUND

Petitioner is a Mexican national who entered the United States without inspection on or about March 10, 2002. ECF No. 1 at 7. He has resided continuously in the United States for over twenty-three years, developing significant community ties. *Id.* Petitioner is engaged to a U.S.

---

[1] "ECF No." refers to the Electronic Case Filing ("ECF") number for documents docketed in this matter. When a discrepancy exists between page numbers on filed documents and page numbers assigned by the ECF system, the Court will use the page numbers assigned by the ECF system.

citizen with whom he manages a business and serves as a father figure to her two U.S. citizen children. *Id.* Petitioner has no criminal history. *See* ECF No. 1–4 at 2.

On July 22, 2025, Petitioner was detained by Immigration and Customs Enforcement ("ICE"). *Id.* at 8. Three months later, he was served with a Notice to Appear dated October 31, 2025, charging him as "an alien present in the United States who has not been admitted or paroled" and as "an immigrant who, at the time of application for admission, is not in possession of a valid unexpired immigrant visa, reentry permit, border crossing card, or other valid entry document required by the Act. . ." *Id.* at 8–9 (citation omitted).

On August 15, 2025, Petitioner requested a bond hearing and filed a Motion for Bond Hearing with the El Paso SPC Immigration Court. *Id.* at 9. Petitioner's request was granted and the Immigration Judge ordered that he be released from custody under bond of $2,500.00. *Id.*; *see also* ECF No 1–5. On August 28, 2025, ICE served Petitioner with a Notice of ICE Intent to Appeal Custody Redetermination, which automatically stayed the Immigration Judge's custody redetermination decision. *Id.* On September 8, 2025, Immigration Judge Stephen Ruhle issued an Amended Order of the Immigration Judge revoking the prior bond of $2,500 and denying the Petitioner's request for a change in custody status citing *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (BIA 2025), averring he did not have jurisdiction to enter a bond order. *Id.*

In his Petition before this Court, Petitioner asks the Court to issue a writ of habeas corpus ordering Respondents to immediately release Petitioner or provide him with a bond hearing and award attorneys' fees. *Id.* at 27. Respondents untimely filed their response, ECF No. 9, on December 21, 2025.

## **LEGAL STANDARD**

The Constitution guarantees that the writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. CONST., Art. I, § 9, cl. 2). This includes immigration-related detention. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001). The petitioner seeking habeas relief must demonstrate they are in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3); *Walker v. Johnston*, 312 U.S. 275, 286 (1941).

## **ANALYSIS**

Respondents erroneously assert the Court is without jurisdiction to review Petitioner's asserted claims. This Court recently rejected nearly identical arguments in a similar case. Further, the Court finds Petitioner's as-applied challenge under the Fifth Amendment's Due Process Clause has merit. Accordingly, Respondents must immediately release Petitioner or reinstate the Immigration Judge's original bond decision, dated August 28, 2025, and release Petitioner under the terms of that decision upon posting bond in the amount of $2,500. *See* ECF No. 1–5. Lastly, because the Court finds an as-applied challenge meritorious,[2] it declines to address Petitioner's statutory interpretation and administrative procedures act claims.[3]

---

[2] The parties argue about Respondents' novel interpretation regarding mandatory detention under Section 1225(b) and whether Petitioner falls within it. Even assuming without deciding Respondents' reading is correct, the Court will not address these arguments because the Court finds Petitioner is entitled to procedural due process in his as-applied challenge.

[3] Notably, courts across the country have recently held that this interpretation is either incorrect or likely incorrect. *See Buenrostro-Mendez v. Bondi*, 2025 WL 2886346 (S.D. Tex. Oct. 7, 2025), 2025 WL 2886346, at *3 (noting that "almost every district court to consider this issue" has rejected the Government's new interpretation); *Lopez-Campos v. Raycraft*, 2025 WL 2496379, at *8 n.5 (E.D. Mich. Aug. 29, 2025) (collecting twelve such decisions).

A.      <u>Jurisdiction</u>

As a threshold matter, the Court asserts its jurisdiction over this case. Respondents argue this Court lacks jurisdiction under two INA provisions: 8 U.S.C. §§ 1252(g) and (b)(9). ECF No. 5 at 5–6. This Court already rejected these arguments in a seemingly identical case where the petitioner was also challenging his detention without a bond hearing under Respondents' expansive reading of Section 1225(b)'s mandatory detention provision. *See Vieira v. De Anda-Ybarra*, No. EP-25-CV-00432-DB, 2025 WL 2937880, at *1, *3 (W.D. Tex. Oct. 16, 2025) (rejecting jurisdictional arguments under Section 1252(g) and Section 1252(b)(9) based on Supreme Court precedent); *see also Rodriguez Cortina v. De Anda-Ybarra*, No. EP-25-CV-00523-DB, 2025 WL 3218682, at *1, *2 (W.D. Tex. Nov. 18, 2025) (rejecting the Government's jurisdictional arguments for the same reasons stated in *Viera*, 2025 WL 2937880, at *3); *Cruz Zafra v. Noem*, No. EP-25-CV-00541-DB, 2025 WL 3239526, at *1, *2 (W.D. Tex. Nov. 20, 2025) (also citing *Viera*, 2025 WL 2937880, at *3 to reject the Government's jurisdictional arguments). Here, because there are no meaningful differences in Respondents' arguments under those provisions, the Court rejects them for the reasons stated in *Vieira*.

B.      <u>Procedural Due Process</u>

Turning to the merits, Petitioner alleges his detention violates the Fifth Amendment's Due Process Clause. ECF No. 1 at 26–27. Respondents argue Petitioner has no procedural due process claim because he is subject to mandatory detention under Section 1225(b)(2),[4] and he is not entitled to any more process than the statute gives him. ECF No. 9 at 2–3, 7.

---

[4] This section is titled "Inspection of other aliens," and generally provides that "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that

4

  1. *Petitioner is entitled to the Fifth Amendment's Due Process Clause's protections.*

The Fifth Amendment's Due Process Clause forbids the government to "depriv[e]" any "person . . . of . . . liberty . . . without due process of law." U.S. CONST. amend V. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." *Zadvydas v. David*, 533 U.S. 678, 690 (2001) (citing *Foucha v. Louisiana,* 504 U.S. 71, 80 (1992)). The Supreme Court "has said that government detention violates that Clause unless the detention is ordered in a *criminal* proceeding with adequate procedural protections, *see United States v. Salerno,* 481 U.S. 739, 746 (1987), or, in certain special and 'narrow' nonpunitive 'circumstances,' *Foucha,* 504, U.S. at 80, where a special justification, such as harm-threatening mental illness, outweighs the 'individual's constitutionally protected interest in avoiding physical restraint.'" *Kansas v. Hendricks,* 521 U.S. 346, 356 (1997). *Id.* "Procedural due process rules are meant to protect persons not from the deprivation, but from the mistaken or unjustified deprivation of life, liberty, or property." *Carey v. Piphus,* 435 U.S. 247, 259 (1978).

  Respondents first contend Petitioner has no claim of right under the Fifth Amendment's Due Process Clause because he is only entitled to the due process provided to him under the INA. ECF No. 9 at 7. In their view, Petitioner is not entitled to more process than what Congress provided him by statute, regardless of whether the applicable statute is § 1225(b) or § 1226(a). *Id.* Respondents cite to *Dept. of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103 (2020) to support their position. But, this Court agrees with the line of other courts that have found *Thuraissigiam* is not

---

an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title." 8 U.S.C. § 1225(b)(2)(A).

preclusive on the facts of this case because (1) Petitioner is not challenging his removal, but rather his detention during removal, and (2) he was not detained at the border on the threshold of initial entry, but rather after living in the United States for nearly twenty-three years.

In *Thuraissigiam*, the Supreme Court held "[m]ore than a century of precedent establishes that, for aliens seeking initial entry, 'the decisions of executive or administrative officers, acting within powers expressly conferred by Congress, are due process of law.'" *Thuraissigiam*, 591 U.S. at 104. The petitioner in that case had been detained after making it 25 yards into U.S. territory, and the Court made clear that an individual detained shortly after unlawful entry cannot be said to have "effected an entry." *Id.* In declining an as-applied constitutional challenge to Section 1252(e)(2), the Court reasoned that "[w]hile aliens who have established connections in this country have due process rights in deportation proceedings, the Court long ago held that Congress is entitled to set the conditions for an alien's lawful entry into this country and that, as a result, an alien at the threshold of initial entry cannot claim any greater rights under the Due Process Clause." *Id.* at 107.

Respondents urge the Court to find *Thuraissigiam* squarely rejects an as-applied challenge in this context, arguing that "[r]egardless of whether the alien in *Thuraissigiam* was on 'the threshold of entry' as an applicant for admission detained under § 1225(b)(1), as opposed to an applicant for admission found within the interior and detained under § 1225(b)(2), the reasoning of *Thuraissigiam* extends to all applicants for admission." ECF No. 9 at 7. Respondents' position overlooks the well-established "distinction between an alien who has effected an entry into the United States and one who has never entered [that] runs throughout immigration law." *Zadvydas*, 533 U.S. at 693. "[O]nce an alien enters the country, the legal circumstance changes, for the Due

Process Clause applies to all "persons" within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Id.* (collecting cases). Even in *Thuraissigiam*, the core point of the Court's analysis in rejecting an as-applied challenge rested on the fact that as an individual who was on the initial threshold of entry, he wasn't entitled to more due process than that afforded by statute. Precedent and logic tell us that those individuals who have established ties in the country are protected by constitutional procedural due process. After all, it is a "well established" rule "that the Fifth Amendment entitles aliens to due process of law." *Trump v. J. G. G.*, 145 S. Ct. 1003, 1006 (2025).  Here, it is undisputed Petitioner has lived in the United States since entering in 2002, and that he was arrested by ICE following an encounter with officers from the Department of Agriculture in Live Oak, Florida. ECF No. 1 at 7–8; ECF No. 1–4 at 2. Petitioner is entitled to the Fifth Amendment's Due Process Clause protections.

> 2. *Based on Mathews v. Eldrige, Section 1252(b)(2) is unconstitutional as applied to Petitioner.*

Finding Petitioner is entitled to procedural due process protection under the Fifth Amendment, the question becomes how much. Petitioner argues Section 1225(b)(2) is unconstitutional as applied to him because it violates his due process protections including a hearing before an immigration judge to determine whether he is a flight risk or a danger to the community. ECF No. 1 at 18, 24–25. Respondents argue due process does not require Petitioner to be afforded a bond hearing, because Section 1225 does not provide one to him during removal proceedings. ECF No. 9 at 7. For reasons already discussed, Respondents arguments are misplaced. Further, Respondents argue Petitioner is receiving sufficient process because he is in full removal proceedings, where "the constitutional protections are built" in. *Id.* But that argument misses the

mark because whatever constitutional procedures are required for his removal are separate and apart from the procedures required for his detention under the Fifth Amendment.

The Supreme Court's balancing test in *Mathews v. Eldrige* is dispositive. "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). "[I]dentification of the specific dictates of due process generally requires consideration of three distinct factors": (1) "the private interest that will be affected by the official action"; (2) "the [g]overnment's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail," and (3) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards." *Id.* at 335.

The first *Mathews* factor weighs in Petitioner's favor. Respondents' position is that Petitioner does not acquire a protected liberty interest until his detention becomes prolonged, and Petitioner has no colorable claim here because "he has been detained for only a brief period pending his removal proceedings." ECF No. 5 at 8. This position fails to consider that above all else, Petitioner has acquired a liberty interest by being present in the United States for nearly twenty-three years. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty [the Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690. One's physical freedom is a paramount interest secured by statutes and the Constitution. *Martinez v. Noem*, No. EP-25-CV-430-KC, 2025 WL 2965859 at *3 (W.D. Tex. Oct. 21, 2025) (citation omitted). This applies to noncitizens as well, even if only to varying degrees. *Id.* "[O]ur immigration laws have long made a distinction between those aliens who have

come to our shores seeking admission . . . and those who are within the United States after an entry, irrespective of its legality." *Martinez v. Hyde*, 792 F.Supp.3d 211 at 222 (D. Mass. 2025) (quoting *Leng May Ma v. Barber*, 357 U.S. 185, 187 (1958)). "In the latter instance the Court has recognized additional rights and privileges not extended to those in the former category who are merely 'on the threshold of initial entry.'" *Id.* (quoting *Leng May Ma*, 357 U.S. at 187).

Here, Petitioner has been living in the United States for approximately twenty-three years and has established strong ties to the community. ECF No. 1 at 7. He is engaged to a U.S. citizen with whom he manages a local business and serves as a father figure to her two U.S. citizen children. *Id.* Like many courts across the country dealing with similar circumstances, this Court finds Petitioner possess a strong liberty interest in his freedom from detention because he has established a life here—albeit without authorization. *See, e.g., Martinez v. Noem,* No. EP-25-CV-430-KC, 2025 WL 2965859 (W.D. Tex. Oct. 21, 2025)*; Sanchez Alvarez v. Noem*, No. 25-CV-1090, 2025 WL 2942648, at *1, 7 (W.D. Mich. Oct. 17, 2025); *Chogllo Chafla v. Scott*, Nos. 25-CV-437, 438, 439, 2025 WL 2688541, at *1, 10 (D. Me. Sept. 22, 2025). Accordingly, he possesses a cognizable interest in his freedom from detention that deserves great weight and gravity.

Turning now to the second *Mathews* factor, which also weighs in favor of Petitioner. Here, the Court considers "the [g]overnment's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S. at 335. Respondents, of course, have a generalized interest in ensuring noncitizens appear for their removal hearings and do not pose a risk to the communities in which they live. Petitioner has already been found not to be a flight risk and has no criminal history that

9

would pose a danger to the community. Respondents vindicated this interest at the previous bond hearing. The government's interest is generally protected by affording bond hearings like the one Petitioner received. Further, any fiscal or administrative burdens Respondents may assert by having to provide any bond hearings are diminished given the government conducted such hearings until a change in the agency's interpretation of the law. *See* ECF No. 1 at 14. Accordingly, this factor weighs in favor of Petitioner.

Lastly, the third *Mathews* factor also weighs in favor of Petitioner. This calls for the Court to consider "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards." *Mathews*, 424 U.S. at 335. Here, Section 1225(b)(2) as applied creates a substantial risk of erroneous deprivation of Petitioner's interest in being free from arbitrary confinement pending resolution of his removal proceedings. The risk lies in the automatic continued deprivation of liberty for a noncitizen who has lived in the United States for nearly twenty-three years and with strong ties to the community, especially where there are no facts in the record to reflect Petitioner's dangerousness or flight risk. Lastly, the value of additional safeguards is high given that bond hearings allow the immigration judges conducting them to make determinations on specific facts regarding whether continued detention is necessary to ensure presence at removal hearings and safety for the community. Because all *Mathews* factors weigh in favor of Petitioner, Section 1225(b)(2) as applied to Petitioner violates his Fifth Amendment Due Process rights.

C.   Remedy

As to the appropriate remedy, Petitioner requests that he be immediately released from custody. ECF No. 1 at 27.

In keeping with other district courts that have considered the issue, the Court will order immediate release or that the Immigration Judge's original bond decision, dated August 28, 2025, be reinstated and that Petitioner be released under the terms of that decision upon posting bond in the amount of $2,500. *See, e.g.*, *Jimenez v. Olson*, 2025 WL 3633609, at *6 (N.D. Iowa Dec. 15, 2025) (ordering respondents to permit petitioner to post bond and release him from custody in accordance with the conditions imposed in previous IJ's bond order); *see also Otilio B.F. v. Andrews*, 2025 WL 3152480, at *12 (E.D. Cal. Nov. 11, 2025); *Jacinto v. Trump*, 796 F. Supp. 3d 584, 592 (D. Neb. 2025); *Maza v. Hyde*, 2025 WL 2951922, at *5 (D. Mass. Oct. 20, 2025); *Sampiao v. Hyde*, 799 F. Supp. 3d 14, 34 (D. Mass. 2025). Further, considering multiple instances[5] where alleged inadvertent mistakes have caused this Court's orders to be violated, the Court issues an expedited timeline for compliance with the instant Order.

## CONCLUSION

For the reasons stated above, this Court determines it has jurisdiction over the instant matter, and Petitioner has established a violation of the Fifth Amendment's Due Process Clause as applied to him. Accordingly, the following orders shall issue:

**IT IS HEREBY ORDERED** that Petitioner Hector Miguel Aguilar Rosado's "Petition for Writ of Habeas Corpus and Complaint for Declaratory and Injunctive Relief," ECF No. 1, is **GRANTED IN PART**.

---

[5] See, e.g., *Blandon Raudez v. Bondi*, No. 3-25-CV-493-DB, (W.D. Tex. October 30, 2025)(removing Petitioner to Mexico nearly 14 hours after this Court issued an order not to remove him from the United States); *Pacay Garcia v. Unknown*, No. 3-25-CV-00591-DB, (W.D. Tex. December 9, 2025), "Advisory to the Court," ECF No. 8 (removing Petitioner from United States after an order not to remove was issued because, among other things, Respondents' counsel "inadvertently failed to forward the Order to Show Cause to ICE agency Counsel").

**IT IS FURTHER ORDERED** Respondents **SHALL** either **IMMEDIATELY RELEASE** Petitioner **OR REINSTATE** the Order of the Immigration Judge dated August 28, 2025,[6] in which it was ordered that Petitioner be released from custody under bond of $2,500, and allow Petitioner to post bond by <u>**no later than January 22, 2026**</u>.

**IT IS FURTHER ORDERED** that the parties **SHALL CONFER AND FILE** a joint status report confirming Petitioner was released or has posted bond, and advising the Court whether any matters remain to be resolved in this case by <u>**no later than January 27, 2026**</u>,

_____
**THE HONORABLE DAVID BRIONES**
**SENIOR UNITED STATES DISTRICT JUDGE**

---

[6] *See* ECF No. 1–5.